## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JOHN JACKSON, | : | Civil Action No. 09-1112 (NLH) |
| | : | |
| Plaintiff, | : | |
| | : | **MEMORANDUM OPINION AND ORDER** |
| v. | : | |
| | : | |
| J. GRONDOLSKY, et al., | : | |
| | : | |
| Defendants. | : | |

This matter comes before the Court upon Plaintiff's filing of his in forma pauperis application, see Docket Entry No. 4, together with Plaintiff's amended complaint, see Docket Entry No. 4-2, and it appearing that:

1.  On February 26, 2009, the Clerk received Plaintiff's petition seeking a writ of habeas corpus, pursuant to 28 U.S.C. § 2241.  See Jackson v. Grondolsky, 09-0853 (NLH), Docket Entry No. 1.  On March 10, 2009, this Court issued an order ("March Order") and accompanying opinion: (a) dismissing the petition for lack of jurisdiction; (b) determining that Plaintiff's allegations raised challenges that should be raised in a civil complaint, pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971); (c) construing, accordingly, Plaintiff's petition as a civil complaint subject to docketing in a new and separate action, which is the instant matter; and (d) noting that the filing fee for a civil

rights complaint is $350.00 and the consequences of an inmate's decision to seek permission to file a civil rights complaint in forma pauperis. See Jackson v. Grondolsky, 09-0853 (NLH), Docket Entries Nos. 2 and 3.  On March 25, 2009, Plaintiff filed a motion for reconsideration of this Court's March Order.  See Jackson v. Grondolsky, 09-0853 (NLH), Docket Entry No. 4.  In his motion, Plaintiff reiterated and elaborated on his Bivens challenges without stating any grounds warranting reconsideration.  See id.  Finally, on April 3, 2009, the Clerk received Plaintiff's letter requesting extension of time to comply with the March Order; the letter indicated Plaintiff's intent to have it filed in Civil Action 09-0853, i.e., the habeas action.  See Jackson v. Grondolsky, 09-0853 (NLH), Docket Entry No. 5.  The letter unambiguously expressed Plaintiff's intent to incur the financial and legal responsibilities associated with a grant of in forma pauperis status (or with Plaintiff's submission of the appropriate filing fee) with respect to Plaintiff's civil rights, i.e., Bivens challenges.  See id.

2.  In light of the statements made in Plaintiff's motion and letter, this Court determined that Plaintiff's allegations warranted the grant of conditional in forma pauperis status for the purposes of the instant matter.  See Instant Action, Docket Entry No. 2.  In addition, upon screening Plaintiff's allegations for sua sponte dismissal, this Court determined

that such dismissal was not warranted.  See id.  The Court, therefore, issued an order dated April 29, 2009 ("April Order"), which: (a) granted Plaintiff conditional in forma pauperis status; (b) directed Plaintiff to either prepay his filing fee or to submit a duly executed application to prosecute this matter in forma pauperis; and (c) directed service of Plaintiff's petition construed as a civil complaint upon Defendants named in that petition.  See id.

3.  On May 29, 2009, the Clerk received a package from Plaintiff containing: (a) a one-page cover letter; (b) Plaintiff's in forma pauperis application ("IFP"); and (c) a document titled "Motion to Amend" (elaborating on Plaintiff's allegations) and a seemingly proposed amended complaint (collectively "Amended Complaint").  See Docket Entry No. 4. This mailing was followed by two other mailings from Plaintiff, i.e.: (a) on July 15, 2009, the Clerk received Plaintiff's request for two additional U.S. Marshal forms (presumably, sought with intent to request service upon two additional defendants); and (b) on July 24, 2009, Plaintiff submitted a 14-page document, which appears to reflect Plaintiff's administrative grievances and a certain request for medical care.  See Docket Entries Nos. 5 and 6.  As of the date of issuance of this Memorandum Opinion and Order, Plaintiff filed no documents supplementing his May 29, 2009, IFP application.  See generally, Docket.

4.    Plaintiff's IFP, in the form it was submitted on May 29,
2009, appears insufficient.  If a prisoner seeks permission
to file a civil rights complaint in forma pauperis, the
Prison Litigation Reform Act requires the prisoner to file a
complete application.  See 28 U.S.C. § 1915(a)(2).
Specifically, under Section 1915, a prisoner seeking to
bring a civil action in forma pauperis must submit an
affidavit, including a statement of all assets, which states
that the prisoner is unable to pay the fee.  28 U.S.C.
§ 1915(a)(1).  The prisoner also must submit a certified
copy of his inmate trust fund account statement(s) for the
six-month period immediately preceding the filing of his
complaint.  28 U.S.C. § 1915(a)(2).  The prisoner must
obtain this certified statement from the appropriate
official of each prison at which he was or is confined.  See
id.; see also Tyson v. Youth Ventures, L.L.C., 42 Fed. App'x
221 (10th Cir. 2002); Johnson v. United States, 79 Fed. Cl.
769 (2007).  Here, Plaintiff submitted his application with
the required certification signature missing, See Docket
Entry No. 4-2, at 4, and an "Inmate Inquiry" as to
Plaintiff's account balance, as of May 21, 2009, instead of
his trust fund account statements for the six-month period
immediately preceding the filing of his complaint.  Without
Plaintiff's explanation as to why he could not obtain a
certified statement and a trust fund account statement for

4

the six-month period immediately preceding the filing of his complaint (including a detailed discussion as to Plaintiff's efforts to obtain the statutorily-required documents), this Court cannot accept Plaintiff's IFP submission in lieu of the required in forma pauperis application.  This Court, however, finds it unwarranted, at this juncture, to deem Plaintiff's conditional in forma pauperis status withdrawn and will extend Plaintiff's conditional in forma pauperis status ensuing from this Court's April Order for thirty days from the date of entry of this Order.  That said, the Court expressly notifies Plaintiff that Plaintiff's failure to timely submit his certified account statement covering the applicable period would result in withdrawal of Plaintiff's conditional IFP status and administrative termination of this matter for lack of prosecution.

5.   In light of Plaintiff's failure to submit documents qualifying him for in forma pauperis status, this Court finds service of Plaintiff's Amended Complaint unwarranted. However, the Court finds it appropriate to screen at this juncture the Amended Complaint, in the interests of judicial economy, to determine whether any of Plaintiff's allegations fail to state a claim upon which relief can be granted.

6.   In determining the sufficiency of a complaint, the Court must be mindful to construe the facts stated in the complaint liberally in favor of the plaintiff.  See Haines

v. Kerner, 404 U.S. 519 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court should "accept as true all of the [factual] allegations in the complaint and reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  While a court will accept well-pled allegations as true, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations.  See id.  The Court of Appeals for the Third Circuit recently provided a detailed and highly instructive guidance as to what kind of allegations qualify as pleadings sufficient to pass muster under the Rule 8 standard.  See Phillips v. County of Allegheny, 515 F.3d 224, 230-34 (3d Cir. 2008). The Court of Appeals guided as follows:

> [There are] two new concepts in Twombly [127 S. Ct. 1955 (2007)].  First, . . . "[w]hile a complaint . . . does not need detailed factual allegations, a plaintiff's [Rule 8] obligation [is] to provide the 'grounds' of his 'entitle[ment] to relief' requires [by stating] more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ." Twombly, 127 S. Ct. at 1964-65 . . . Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." Id. at 1965 n.3.  . . . "[T]he threshold requirement of Rule 8(a)(2) [is] that the 'plain statement [must] possess enough heft to 'sho[w] that the pleader is entitled to relief.'" Id. at 1966.  [Hence] "factual allegations must be enough to raise a right to relief above the speculative level." Id.

at 1965 & n.3.  Second, the Supreme Court
disavowed certain language that it had used many
times before -- the "no set of facts" language
from Conley.  See id. at 1968. . . .  After
Twombly, it is no longer sufficient to allege mere
elements of a cause of action; instead "a
complaint must allege facts suggestive of the
proscribed conduct."  Id. . . . .  The more
difficult question raised by Twombly is whether
the Supreme Court imposed a new "plausibility"
requirement at the pleading stage that materially
alters the notice pleading regime.  . . . The
Court explained that a plaintiff must "nudge [his
or her] claims across the line from conceivable to
plausible" . . . .  127 S. Ct. at 1974. . . .
"Plausibility" is related to the requirement of a
Rule 8 "showing." [Thus, while a court cannot]
dismiss[] . . . a well-pleaded complaint simply
because "it strikes a savvy judge that actual
proof of those facts is improbable," the
"[f]actual allegations must be enough to raise a
right to relief above the speculative level." Id.
at 1965. [T]he pleading standard can be summed up
thus: "stating . . . a claim requires a complaint
with enough factual matter (taken as true) to
suggest" the required element.  Id.  This "does
not impose a probability requirement at the
pleading stage[]" but . . . "calls for enough
facts to raise a reasonable expectation that
discovery will reveal evidence of" the necessary
element.  Id.

Phillips, 515 F.3d at 230-34 (original brackets removed).

7.    Plaintiff's Amended Complaint names, as Defendants in this

      action, the following persons: (a) Warden Grondolsky

      ("Grondolsky"); (b) Doctor Seabur ("Seabur"); (c) Mr.

      Spalding ("Spalding"); (d) Ms. Lopez; (e) Ms. Cane; (f) Mr.

      Sutterland ("Sutterland"); and (g) a certain Jane Doe

      ("Doe") who, apparently, signed certain documents with

      inscription reading "mmm."  See Docket Entry No. 4, at 8,

      13.

8.    Plaintiff's allegations could be summarized as follows: at
      the time of his transfer from FCI Big Spring to the place of
      his current confinement, FCI Fort Dix, Plaintiff arrived to
      Fort Dix with already established diagnoses of uveitis,[1]
      glaucoma,[2] photophobia,[3] cataract,[4] and sarcoidosis.[5]   See id.

---

[1] Uveitis is a general term that refers to inflammation or
swelling of the eye's structures responsible for its blood
supply.  See <<www.stlukes-eye.com/Conditions/Uveitis.asp>>.

[2] The term "glaucoma" refers to a group of diseases that
affect the optic nerve and involve loss of retinal ganglion cells
in a characteristic pattern.  See <<www.glaucoma.org>>.

[3] Photophobia is a symptom of excessive sensitivity to
light and the aversion to sunlight or well-lit places, not in the
sense of a morbid fear, but in the sense of an experience of
discomfort or pain to the eyes due to light exposure.  While for
many people, photophobia is not due to any underlying disease,
severe photophobia may be associated with eye problems and cause
severe eye pain even in relatively low light. See <<http://www.
nlm.nih.gov/MEDLINEPLUS/ency/article/003041.htm>>.

[4] A cataract is a clouding that develops in the crystalline
lens of the eye or in its envelope, varying in degree from slight
to complete opacity and obstructing the passage of light.  See
<<www.emedicinehealth.com/cataracts/article_em.htm>>.

[5] Sarcoidosis is a disease that results from a specific
type of inflammation of tissues of the body. It can appear in
almost any body organ, but it starts most often in the lungs or
lymph nodes.  The cause of sarcoidosis is unknown.  The disease
can appear suddenly and disappear.  Or it can develop gradually
and go on to produce symptoms that come and go, sometimes for a
lifetime.  As sarcoidosis progresses, microscopic lumps of a
specific form of inflammation, called granulomas, appear in the
affected tissues. In the majority of cases, these granulomas
clear up, either with or without treatment.  In the few cases
where the granulomas do not heal and disappear, the tissues tend
to remain inflamed and become scarred (fibrotic).  See
<<http://www.medicinenet.com/sarcoidosis/article.htm>>.

In light of Plaintiff's diagnoses, Plaintiff had surgery while at FCI Big Spring, and ongoing treatment in the form of three types of eye drops and medical monitoring of Plaintiff's eye condition.  See id. at 9-10.  Upon his arrival at For Dix, Plaintiff informed the prison officials of his diagnoses and requested refills of the three prescribed eye drops.  See id. at 10.  Plaintiff's request was approved and, thirty months after his arrival to Fort Dix, he was examined by Defendant Seabur.  See id.  However, Plaintiff alleges that, after an initial prompt refill of his prescription, Plaintiff's requests for following refills were delayed on numerous occasions for non-medical reasons.  See id. at 11.  In addition, Plaintiff asserts that, when his eye condition began deteriorating and resulted in burning, itching and pain in the eyes, Defendants denied Plaintiff's request to be examined by an ophthalmologist, and his condition continued to be monitored by Defendant Seabur, who is an optometrist who, seemingly, either conducted eye pressure checks less frequently than what Plaintiff desired or never conducted these checks.  See id. at 10-11.  Plaintiff asserts that, as a result of insufficient medical treatment, he lost vision in his left eye.  See id. at 11, 14.

9. Plaintiff's allegations against Defendants other than Seabur read as follows:

The facts of this case are very simplistic.
Clearly, all the Defendants named in this
Complaint played a part in the denial of
[P]laintiff's reasonable request for adequate
medical care, and treatment, that resulted in a
devastating loss of vision to Plaintiff's left
eye, with possible irreparable harm and serious
danger to his right eye, whatsmore [sic].
Defendants all played a part in intentionally
imparing [sic.] and impeding [P]laintiff's efforts
in receiving the adequate eye care via an
opthalmologist which exposed [P]laintiff to undue
suffering and threat to tangible injury when all
Defendants had full intellectual knowledge of
[P]laintiff's c[h]ronic eye disease, blin[d]ness
to his left eye, and [P]laintiff's urgent need for
the proper medical care, via a treatment plan. . .
. Ms. Lopez, Mr. Spalding, Ms. Cane intentionally
refused to refer [P]laintiff to an
[o]phthalmologist who was qualified to provide
[P]laintiff with the care that he needed.  . . .
[P]laintiff [made a written] request known to Ms.
Lopez . . . explaining to her in full detail about
his cronic eye disease, and what Dr. Seabur . . .
advised him to bring his urgent request to see an
ophthalmologist to her attention.  Ms. Lopez . . .
never responded.  Plaintiff seen Ms. Cane at the
lunch main-line and explained his situation to her
that he could not see out of his left eye, that he
needed to see a specialist, because Dr. Seabur
said there was nothing he could do.  Ms. Cane
specifically advised plaintiff that Dr. Seabur was
only an [o]ptometrist, and not an
[o]phthalmologist. . . . Plaintiff [then] spoke
with Mr. Spalding about his complications from
sarcoidosis and his loss of vision, in his left
eye.  Mr. Spaldings response to [P]laintiff was
very unprofessional and [o]pprobrious, Spalding
replied to plaintiff in a very [a]crimonious tone
of voice asking Plaintiff "Who do you think you
are? You don't get to see the Doctor you want to
see, and you don't impress me with your big words.
Plaintiff was absolutely mortified. Plaintiff's
medical treatment plan was denied for non-medical
reasons.  The Jane Doe administrator remedy

> coordinator . . . and Mr. Suterland[6] erected
> arbitrary and burdensome procedures that resulted
> in interminable delays and outright denials of
> adequate medical care to [P]laintiff . . . .

Id. at 12-13.

10. Personal involvement by a defendant is an indispensable
element of a valid legal claim; such personal involvement
may exist only where the named defendant violated the
plaintiff's rights either by executing the acts at issue
himself or herself, or by directing others to violate the
plaintiff's rights.  See Baker v. Monroe Township, 50 F.3d
1186, 1190-91 (3d Cir. 1995); Rode v. Dellarciprete, 845
F.2d 1195, 1207 (3d Cir. 1988).  Conversely, where no
personal involvement by the defendant is asserted, the
plaintiff's claim against that defendant is subject to
dismissal.  Rode, 845 F.2d at 1207.  Thus, it is well
established that supervisory liability cannot be imposed
under § 1983 on a respondeat superior theory.  See Monell v.
Dep't of Soc. Servs., 436 U.S. 658 (1978); Rizzo v. Goode,
423 U.S. 362 (1976).  "'A defendant in a civil rights action
must have personal involvement in the alleged wrongdoing;
liability cannot be predicated solely on the operation of
respondeat superior.'"  Evancho v. Fisher, 423 F.3d 347, 353
(3d Cir. 2005) (quoting Rode v. Dellarciprete, 845 F.2d

---

[6] Plaintiff's complaint uses two alternative spellings of
Defendant's Sutterland last name, with a single "t" and with
double "t."

11

1195, 1207 (3d Cir. 1988)).  Personal involvement can be shown through allegations that a defendant directed a deprivation of a plaintiff's constitutional rights, <u>see</u> <u>id.</u>; <u>Monell</u>, 436 U.S. at 694-95 (1978), or if the supervisor implemented deficient policies and was deliberately indifferent to the resulting risk or the supervisor's actions and inactions were "the moving force" behind the harm suffered by the plaintiff.  <u>See</u> <u>Sample v. Diecks</u>, 885 F.2d 1099, 1117-118 (3d Cir. 1989); <u>see also</u> <u>City of Canton v. Harris</u>, 489 U.S. 378 (1989); <u>Heggenmiller v. Edna Mahan Corr. Inst. for Women</u>, No. 04-1786, 128 Fed. App'x 240 (3d Cir. 2005).

11. Plaintiff has a protected right in being incarcerated at a place of confinement conforming to the standards set forth by the Eighth Amendment.  The Constitution "does not mandate comfortable prisons," <u>Rhodes v. Chapman</u>, 452 U.S. 337, 349 (1981), but neither does it permit inhumane ones, and it is now settled that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." <u>Helling v. McKinney</u>, 509 U.S. 25, 31 (1993).  In its prohibition of "cruel and unusual punishments, the Eighth Amendment . . . imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials . . . must take reasonable measures to guarantee the safety of the

12

inmates." <u>Hudson v. Palmer</u>, 468 U.S. 517, 526-527 (1984), <u>see</u> <u>Helling</u>, 509 U.S. at 31-32; <u>Washington v. Harper</u>, 494 U.S. 210, 225 (1990); <u>Estelle v. Gamble</u>, 429 U.S. 97, 103 (1976).  The Eighth Amendment prohibits conditions which involve the unnecessary and wanton infliction of pain or are grossly disproportionate to the severity of the crime warranting imprisonment.  <u>Rhodes</u>, 452 U.S. at 346, 347.  The cruel and unusual punishment standard is not static, but is measured by "the evolving standards of decency that mark the progress of a maturing society."  <u>Rhodes</u>, 452 U.S. at 346 (quoting <u>Trop v. Dulles</u>, 356 U.S. 86, 101 (1958)).  Thus, to prevail on a medical care claim under the Eighth Amendment, an inmate must show that the defendants were deliberately indifferent to his serious medical needs.  <u>See</u> <u>Estelle v. Gamble</u>, 429 U.S. 97; <u>Rouse v. Plantier</u>, 182 F.3d 192, 197 (3d Cir. 1999).  Persistent severe pain qualifies as a serious medical need.  A medical need is serious where it "has been diagnosed by a physician as requiring treatment or is . . . so obvious that a lay person would easily recognize the necessity for a doctor's attention."  <u>Monmouth County Correctional Institution Inmates v. Lanzaro</u>, 834 F.2d 326, 347 (3d Cir. 1987), <u>cert. denied</u>, 486 U.S. 1006 (1988).  "Deliberate indifference" also exists "where [a] prison official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2)

13

delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." Rouse, 182 F.3d at 197. Furthermore, deliberately delaying necessary medical diagnosis for a long period of time in order to avoid providing care may constitute deliberate indifference that is actionable. See Durmer v. O'Carroll, 991 F.2d 64 (3d Cir. 1993). Deliberate indifference is also found where officials erect arbitrary and burdensome procedures that result in interminable delays and denials of medical care to suffering inmates. See Monmouth County Correctional Institution Inmates v. Lanzaro, 834 F.2d 326, 346-47 (3d Cir. 1987), cert. denied 486 U.S. 1006 (1998). However, neither inconsistencies or differences in medical diagnoses, nor refusal to consider inmate's self-diagnoses, to summon the medical specialist of the inmate's choice, to perform tests or procedures that the inmate desires, to explain to the inmate the reason for medical action or inaction, or to take measures to ensure against a hypothetical future medical problem cannot amount to cruel and unusual punishment. See White v. Napoleon, 897 F.2d 103 (3d Cir. 1990) (mere disagreements over medical judgment do not state Eighth Amendment claims); Jones v. Lockhart, 484 F.2d 1192 (8th Cir. 1973) (allegations of mere differences of opinion over matters of medical judgment fail to state a federal

14

constitutional question); Hyde v. McGinnis, 429 F.2d 864 (2d Cir. 1970) (a difference of opinion between physician and patient did not sustain a claim under § 1983; the conduct must be so harmful that it should be characterized as a barbarous act that shocked the conscience); Patterson v. Lilley, 2003 U.S. Dist. LEXIS 11097 (S.D.N.Y. June 20, 2003) (defendants could only be held deliberately indifferent to an existing serious medical condition, not a speculative future medical injury); Goff v. Bechtold, 632 F. Supp. 697 (S.D. W. Va. 1986) (denial of preferred course of treatment does not infringe constitutional rights); accord McClung v. Camp County, 627 F. Supp. 528 (E.D. Tex. 1986) (evidence that diabetic inmate was given medication 3 times per day instead of prescribed 4 daily doses was insufficient to constitute constitutional violation in absence of demonstrated harm); Jefferson v. Douglas, 493 F. Supp. 13 (W.D. Okla. 1979) (inmate's difference of opinion with prison medical staff as to proper diet he was to receive for his diabetes did not constitute cruel and unusual punishment to sustain claim under 42 U.S.C. § 1983); Smith v. Sator, 102 Fed. App'x 907 (6th Cir. 2004) (where a prisoner alleged that defendants did not provide various specialized medical tests that the prisoner found to be necessary based on his reading of medical literature, the court held that the complaint was frivolous because refusal to provide

15

specialized tests amounted to nothing more than a difference
of opinion regarding the medical diagnosis and treatment and
did not rise to the level of an Eighth Amendment violation);
Lopez v. Kruegar, 1990 U.S. Dist. LEXIS 6808 (E.D. Pa. June
4, 1990) (where plaintiff stated that he was receiving
medication but felt that additional medical tests should be
taken, his allegations were directed at the wisdom or
quality of treatment and did not state a claim); Coleman v.
Crisp, 444 F. Supp. 31 (W.D. Okla. 1977) (difference of
opinion between plaintiff and doctors concerning
availability of treatment and medication did not establish
violation of constitutional right or sustain claim); McNeil
v. Redman, 21 F. Supp. 2d 884 (C.D. Ill. 1998) (an inmate
has no constitutional right to see a doctor on demand; the
decision whether to summon a doctor, like the question of
whether a certain diagnostic technique or form of treatment
should be prescribed, "is a classic example of a matter for
medical judgment") (quoting Estelle, 429 U.S. 97).
Moreover, the allegations that the inmate was provided with
medical care, but the care was "inadequate," fail to state a
cognizable claim.  See Gatewood v. Hendrick, 368 F.2d 179
(3d Cir. 1966), cert. denied, 386 U.S. 925 (1967) (prisoner
who did not claim that he was denied any medical care but
rather that he received only inadequate medical care, and
gave no indication that he sustained serious physical injury

as result of alleged inadequate treatment, failed to state claim for relief); see also Alsina-Ortiz v. Laboy, 400 F.3d 77 (1st Cir. 2005)(a doctor's failure to respond to certain request for services by the inmate, in context of the doctor's continued and regular services, did not deprive the inmate of any meaningful treatment); Hasty v. Johnson, 103 Fed. App'x 816 (5th Cir. 2004) (prisoner failed to state a claim for deliberate indifference to his medical needs where he alleged that medical personnel provided him with purportedly less efficacious drugs for gastroesophageal reflux disease; the decisive fact was that he received "a" treatment); Church v. Hegstrom, 416 F.2d 449 (2d Cir. 1969) (mere negligence does not suffice to support a § 1983 action); Watson v. Weldon, 2000 U.S. Dist. LEXIS 11109 (D.S.C. Jan. 12, 2000) (prisoner's claim that prison doctor's slow treatment of plaintiff's toenail fungus was cruel and unusual punishment failed to state a serious medical condition sufficient to support a claim for relief).

12. Furthermore, acts of verbal harassment cannot qualify as violations of the Eighth Amendment.  See Stepney v. Gilliard, 2005 U.S. Dist. LEXIS 31889, at *19 (N.J.D. Dec. 8, 2005) ("[V]erbal harassment and taunting is neither 'sufficiently serious' nor 'an unnecessary and wanton infliction of pain' under the common meaning of those terms. 'Verbal harassment or profanity alone . . . no matter how

inappropriate, unprofessional, or reprehensible it might seem,' does not constitute the violation of any federally protected right and therefore is not actionable under [Section] 1983") (quoting Shabazz v. Pico, 994 F. Supp. 460, 474 (S.D.N.Y. 1998), and citing Collins v. Graham, 377 F. Supp. 2d 241, 244 (D. Me. 2005)); see also Robinson v. Taylor, 2005 U.S. Dist. LEXIS 20951, at *8-9 (D. Del. Sept. 26, 2005) ("[M]ere verbal harassment does not give rise to a constitutional violation[; even if it is] inexcusable and offensive, [it] do[es] not establish liability under section 1983) (quoting McBride v. Deer, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001) and citing Moore v. Morris, 116 Fed. App'x 203, 205 (10th Cir. 2004), Freeman v. Arpaio, 125 F.3d 732, 738 (9th Cir. 1997), and Prisoners' Legal Ass'n v. Roberson, 822 F. Supp. 185, 187-89 (D.N.J. 1993)); Abuhouran v. Acker, 2005 U.S. Dist. LEXIS 12864, at *15 (E.D. Pa. June 29, 2005) ("It is well established . . . that . . . verbal harassment, . . . standing alone, do[es] not state a constitutional claim") (citing Dewalt v. Carter, 224 F.3d 607, 612 (7th Cir. 1999); Williams v. Bramer, 180 F.3d 699, 706 (5th Cir. 1999); Maclean v. Secor, 876 F. Supp. 695, 698 (E.D. Pa. 1995)); Collins v. Cundy, 603 F.2d 825 (10th Cir. 1979) (dismissing prisoner's claim that defendant laughed at prisoner and threatened to hang him).

13. Finally, the Fourteenth Amendment does not guarantee inmates a right to an investigation or a response from prison officials as to administrative grievances (or to any replies by prison officials to inmates' other complaints or demands of a grievance nature).  See, e.g., Wilson v. Horn, 971 F. Supp. 943, 947 (E.D. Pa. 1997), aff'd, 142 F.3d 430 (3d Cir. 1998); McGuire v. Forr, 1996 U.S. Dist. LEXIS 3418 at *2, n.1 (E.D. Pa. Mar. 21, 1996), aff'd, 101 F.3d 691 (3d Cir. 1996); see also Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994), cert. denied, 514 U.S. 1022 (1995); Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); Brown v. G. P. Dodson, 863 F. Supp. 284, 285 (W.D. Va. 1994).  Furthermore, if construed as a First Amendment allegation -- rather than a Fourteenth Amendment one -- an assertion that an official failed to respond to an inmate's grievance fails to state a cognizable claim.  See Minnesota State Bd. for Community Colleges v. Knight, 465 U.S. 271, 285 (1984).  "Nothing in the First Amendment or in . . . case law interpreting it suggests that the rights to speak, associate, and petition require government policymakers to listen or respond to individuals communications."  Id.; see also Foraker v. Chaffinch, 501 F.3d 231, 237 (3d Cir. 2007) (pointing out that the courts "have never held . . . that a report of a . . . misconduct . . . constitutes 'petitioning activity'" and citing Hill v.

<u>Borough of Kutztown</u>, 455 F.3d 225, 230-32 (3d Cir. 2006));
<u>Bieregu v. Reno</u>, 59 F.3d 1445, 1453 n.3 (3d Cir. 1995)
(noting that, "[a]t the founding, the Petition Clause also
implied a congressional duty to respond . . . . In the Civil
War era, however, Congress enacted rules abolishing the duty
to respond, a change later sanctioned by the Supreme Court,"
and citing, <u>inter alia</u>, <u>Smith v. Arkansas State Highway
Employees</u>, 441 U.S. 463, 465 (1979) (<u>per curiam</u>)
(constitution does not require government "to listen [or] to
respond" to citizen petition), and <u>Minnesota State Bd.</u>).

14.  In light of the aforesaid standards, Plaintiff's Amended
     Complaint fails to state a claim against the bulk of the
     named Defendants.

     (a)  Plaintiff's allegations against Defendant Cane are
          limited to an assertion that Cane informed Plaintiff of
          Seabur's medical specialization and Plaintiff's self-
          serving conclusion that Cane "clearly . . . played a
          part" in the alleged wrong, and "intentionally refused
          to refer [P]laintiff to an [o]phthalmologist," even
          though Plaintiff neither alleges any facts supporting
          these conclusions nor even asserts that Cane had any
          power to refer Plaintiff for treatment.  Since
          Plaintiff's claims against Cane do not assert any facts
          indicating Cane's personal involvement in any

violations of Plaintiff's rights, his claims against
Cane should be dismissed.

(b)   Plaintiff's allegations against Doe and Sutterland fare
no better.  According to the Amended Complaint, both
Doe and Sutterland were officials in charge of
administrative processing of grievances.  Without
providing the Court with a single fact, Plaintiff
limits his allegations against these Defendants with a
self-serving conclusion that they "erected arbitrary
and burdensome procedures that resulted in interminable
delays and outright" violated Plaintiff's rights.
While it is true that deliberate indifference could be
found where officials "erect arbitrary and burdensome
procedures that result in interminable delays and
denials of medical care," Lanzaro, 834 F.2d at 346-47,
"[Rule 8] requires [Plaintiff to assert] more than
labels and conclusions, and a formulaic recitation of
the elements of a cause of action . . . ." Twombly, 127
S. Ct. at 1964-65.  Therefore, without Plaintiff's
detailed explanation as to which "arbitrary and
burdensome procedures" were erected by these
Defendants, Plaintiff's allegations against them are as
insufficient as his self-serving conclusion that they
"clearly . . . played a part" in violation of
Plaintiff's rights, and should be dismissed.

21

(c) Similarly, as stated, Plaintiff's allegations against Defendants Grondolsky and Spalding fail to amount to a cognizable claim.  Even if the Court assumes the truth of the assertion that Spalding used a rude tone with the Plaintiff, such conduct does state an Eighth Amendment claim.  Plaintiff's allegations against these Defendants amounting to a self-serving conclusion that these Defendants "clearly . . . played a part" in violation of Plaintiff's rights cannot state a claim. At most, Plaintiff's claims against these Defendants appear to be based on the doctrine of <u>respondeat superior</u>, which is insufficient to state a claim. Finally, even if this Court were to read Plaintiff's allegations as a claim based on failure to respond to Plaintiff's grievances, Plaintiff's allegation still do not amount to a cognizable claim, since a failure to respond to an inmate's grievances "does not violate his rights to due process and is not actionable," <u>Stringer v. Bureau of Prisons</u>, 145 Fed. App'x 751, 753 (3d Cir. 2005) (citing <u>Antonelli v. Sheahan</u>, 81 F.3d 1422, 1430 (7th Cir. 1996)), and Plaintiff's assertions do not qualify for the narrow exception ensuing from <u>Nami v. Fauver</u>, 82 F.3d 63 (3d Cir. 1996).  In <u>Nami</u>, pro se plaintiff inmates brought an action under 42 U.S.C. § 1983 against defendants Commissioner of the New Jersey

Department of Corrections, the warden, and the Assistant Superintendent of the Unit, in which plaintiffs alleged that conditions in which they were confined amounted to cruel and unusual punishment under the Eighth Amendment. When the complaint was dismissed on the basis of the theory of <u>respondeat superior</u>, (and that the defendants were state officials immune from suit under the Eleventh Amendment), the Court of Appeals reversed, stating:

> We must determine whether, under any reasonable reading of the pleadings, the plaintiffs may be entitled to relief . . . . The complaint will be deemed to have alleged sufficient facts if it adequately put the defendants on notice of the essential elements of the plaintiffs' cause of action. . . . The district court's order granting the defendants' motion to dismiss will be affirmed only if it appears that the plaintiffs could prove no set of facts that would entitle them to relief. [See] Conley v. Gibson, 355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). . . . [The] complaint actually states that "letters have been written to the [administration] concerning all matters set forth in the complaint. All requests for administrative remedies were refused." . . . This suggests that the defendants here were on actual notice by plaintiffs' reports of [plaintiffs' conditions of confinement]. Although, by itself, such notice may not equal proof of deliberate indifference, it nevertheless directly contradicts the district court's tacit [*41] conclusion . . . that plaintiffs could prove no set of facts that would . . . entitle them to relief. . . . [W]e cannot say that the plaintiffs would be unable to prove that prison conditions were objectively unacceptable, and that prison officials were deliberately

> indifferent to plaintiffs' plight.
> [Moreover,] the district court entertained,
> but rejected . . . the possibility that
> plaintiffs may be able to satisfy some
> deficiencies in their original pleading by
> filing an amended complaint [even though]
> plaintiffs may be able to allege in an
> amended complaint, for example, sufficient
> facts to support a finding that some
> defendants displayed deliberate indifference
> to certain harms, or that all officials were
> deliberately indifferent to the possibility
> that the conditions under which they housed
> the plaintiffs significantly increased the
> possibility of such well-known harms . . . .

Nami v. Fauver, 82 F.3d at 65-68.  Reading the holding

of Nami rendered in 1996 through the prism of the

Twombly Court's abandonment of the Conley language, and

the Court of Appeals' guidance in Durmer v. O'Carroll,

991 F.2d 64 (3d Cir. 1993), and Spruill v. Gillis, 372

F.3d 218 (3d Cir. 2004), the Court concludes that

Plaintiff's allegations against Defendants Grondolsky

and Spalding are subject to dismissal.[7]  Here,

---

[7]    In Durmer, the Court of Appeals approved the grant of
summary judgment in favor of the Commissioner of Corrections and
prison warden accused of deliberate indifference to the
plaintiff's serious medical needs.  In that case, "the only
allegation against either of these two defendants was that they
failed to respond to letters [the inmate-plaintiff] sent to them
explaining his predicament."  Durmer, 991 F.2d  69.  The court
concluded that "[n]either of these defendants . . . is a
physician, and neither can be considered deliberately indifferent
simply because they failed to respond directly to the medical
complaints of a prisoner who was already being treated by the
prison doctor."  Id. at 69.  Further elaborating on the same
issue in Spruill, the Court of Appeals observed as follows:
"If a prisoner is under the care of medical experts ([two medical
doctors] in this case), a non-medical prison official will
generally be justified in believing that the prisoner is in

Plaintiff's Exhibit "B" indicates that Plaintiff's grievances were limited to: (a) his dissatisfaction with the way the grievance process was administered at Fort Dix; and (b) assertions of Plaintiff's disagreement with Defendant Seabur's medical conclusions. Similarly, Plaintiff's allegations against Spalding are limited to the assertion that Spalding ignored Plaintiff's interest in being treated by a medical professional other than Defendant Seabur. Since these allegations do not indicate that Plaintiff ever asserted to either Grondolsky or Spalding that he was not under a medical care of a medical professional, these claims should be dismissed.

(d) That leaves the Court with Plaintiff's allegations against Defendants Seabur and Lopez only. As drafted, these allegations too appear questionable: indeed, in

---

capable hands. This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor. Moreover, under such a regime, non-medical officials could even have a perverse incentive not to delegate treatment responsibility to the very physicians most likely to be able to help prisoners, for fear of vicarious liability." Spruill, 372 F.3d at 236. Joint reading of Twombly, Phillips, Nami, Dumer and Spruill leads this Court to conclude that a mere allegation by a prisoner that he filed grievances with -- or orally informed -- prison officials about deficiencies of his ongoing medical care must be dismissed for failure to state a cognizable constitutional claim.

his Amended Complaint Plaintiff admits that he was
provided with some medical care, and his allegations
are merely limited to his opinion that the care was
either inadequate or did not provide him with
assurances against the speculative injuries Plaintiff
may eventually suffer in the future.  However, the
Court cannot rule out the possibility that Plaintiff's
choice of words was merely reflective of his lack of
legal savvy rather than lack of sufficient facts and,
if allowed to elaborate on his allegations, Plaintiff
might be able to state sufficient claims against these
Defendants.[8]

IT IS therefore on this  11th   day of   August  , 2009,

---

[8]  As the discussion of applicable legal standards provided
_supra_ illustrates, Plaintiff's assertion that Seabur did not
administer the pressure checks Plaintiff desired cannot amount to
a cognizable claim, since Plaintiff has no constitutional right
to tests of his choice.  However, Plaintiff's allegations might
be sufficient to survive _sua_ _sponte_ dismissal as to Seabur's
decision to deny Plaintiff the medications prescribed to
Plaintiff at FCI Big Spring.  Moreover, Plaintiff seems to assert
that Seabur came to a good-faith medical judgment that
Plaintiff's health condition required Plaintiff's reference to a
medical professional having expertise other than that of Seabur,
and Plaintiff informed Lopez accordingly, but neither Seabur nor
Lopez acted upon Seabur's medical judgment.  See Docket Entry No.
4, at 12-13.   These allegations appear to be sufficient to
survive _sua_ _sponte_ dismissal and, indeed, appear qualitatively
different from Plaintiff's claims against Grondolsky and Spalding
who, seemingly, were never informed by Plaintiff about Seabur's
opinion that Plaintiff was in dire need of medical care other
than the one Seabur could provide.

ORDERED that Plaintiff's application to proceed in this matter in forma pauperis is denied, without prejudice; and it is further

ORDERED that Plaintiff's conditional in forma pauperis status is extended for thirty days from the date of entry of this Memorandum Opinion and Order; and it is further

ORDERED that Plaintiff shall submit a complete in forma pauperis application within thirty days from the date of entry of this Order, or a detailed written statement clarifying to the Court why a complete in forma pauperis application cannot be submitted (such statement shall list each and all Plaintiff's efforts in obtaining a complete in forma pauperis application, as well as corresponding events that prevented Plaintiff from obtaining the same; the statement shall include all relevant dates and designate the names and titles of the prison officials involved in these events, if any).  In the event Plaintiff fails to timely submit a complete in forma pauperis application, Plaintiff's conditional in forma pauperis status will be revoked, and the instant matter will be administratively terminated for lack of prosecution without further notice to Plaintiff; and it is further

ORDERED that Plaintiff's allegations against all Defendants named in the Amended Complaint, Docket Entry No. 4, are dismissed; and it is further

27

ORDERED that such dismissal is without prejudice to Plaintiff's filing of a re-amended complaint within thirty days from the date of entry of this Memorandum Opinion and Order; and it is further

ORDERED that Plaintiff shall cure the deficiencies of his pleading in accordance with the guidance provided to him in this Memorandum Opinion and Order;[9] and it is finally

ORDERED that the Clerk shall serve a copy of this Memorandum Opinion and Order upon Plaintiff by regular mail, together with a blank in forma pauperis application.


/s/NOEL L. HILLMAN
NOEL L. HILLMAN
United States District Judge


At Camden, New Jersey

---

[9]  To that effect, the Court reminds Plaintiff to avoid self-serving conclusions, recitation of elements of the claim, accusatory generalities, etc., and urges Plaintiff to limit his pleading to statements of actual and specific facts, and clear requests for remedies.  In addition, the Court strongly encourages Plaintiff not to include in his pleading lengthy paragraphs repeating the statement, which the Court made in this Memorandum Opinion and Order, or in its April Order, since the Court is well aware of the statements it made.  Finally, the Court recommends Plaintiff not to include in his pleading attachments replicating (and re-replicating) the exhibits Plaintiff already included in his original petition and the Amended Complaint: it is sufficient for Plaintiff to simply refer to these exhibits without attaching them anew.